from the parties in Judge Rotenberg Education Center v. Blass. May I? Let's just wait till counsel sits down. Thank you. Okay. Good morning. May I please the court? My name is Adriana Lopez and I represent the defendants in this case. JRC the plaintiff in this case is not entitled to any compensation because they frustrated the Suffolk County Department of Social Services efforts to find an appropriate placement for RP. How did they frustrate it? Your Honor, one after OPWDD denied eligibility for Medicaid. They contacted DSS. We told them please bring her back. We were going to be placing her in the appropriate setting. And once they got to Suffolk County, they took it upon themselves to bring her back to Massachusetts without notifying. It's you. You're missing a step. When they brought her back, they were told where they should take her was to a homeless shelter. And now both by contract and by law, that is the one place she cannot be placed. So I don't see how they frustrated your efforts to be sure if you'd had a proper placement for her at that time and they'd taken her back. That would be one thing. But isn't that the case that where they were told to take her was to a homeless shelter? Yes, Your Honor, subject to placement of a more proper setting. Was it 11 months to identify? Well, Your Honor, what happened was that when she was in foster care, DSS did take necessary steps to try to transfer her to JRC adult setting placement at that time. However, because of the issues that they encountered with the eligibility, it took more time than expected. However, we had a- Yes, but I don't understand how you're not then responsible for compensating them for their taking care of her until you found a proper placement. Well, Your Honor, at that time we said that she had already turned 21. She was placed as an adult in JRC and we were- But you agree that you are obliged to find a placement for someone who is transitioning from foster care as a child to adult status. Yes, Your Honor, I'm not- And that as she turned 21, you had not located such a place. Your Honor, yes, we do agree that we did have that responsibility. And you also agree that this homeless shelter was not an appropriate placement? Well, Your Honor, we told her case workers who brought her down to bring her to the homeless shelter so she could be evaluated and then be placed in a supervised setting. I think after they were just told that it was a homeless shelter, they just decided, okay, let's just bring her back, but they- Homeless shelters where an evaluation would have been done and she would have gone someplace else that night? That's, I believe, what the plan was from DSS. Where? Where is that in the record? It's not in the records, Your Honor, but what I understand is that when somebody, let's say, somebody who's a victim of domestic violence. The reality is you didn't have a placement for her that night. And that's evident from the fact that it's not as if the next week you contacted them and said, please, she goes to whatever place, you didn't place her for 11 months. That's why they're looking for compensation, because they cared for her for 11 months. You didn't place her. That is correct, Your Honor, but I just want the court to, just the record to be clear that DSS did take some steps to try to find her place, the appropriate placement. Can I just ask you about the timeline before she arrived at the homeless shelter? I'm sorry, Judge? Can I just ask you about the timeline before she arrived at that homeless shelter? She was placed in a homeless shelter, I think, in January of 09. That sounds right, right? She was never placed in a homeless shelter, Your Honor. She was going, I'm sorry. They thought she was going to be placed in a homeless shelter in January 09, right? That's when JRC took her back to Massachusetts. Yes, Your Honor. And it was in April, though, the preceding April, that the first decision was made by OPWDD that we're not going to pay for it. That is correct. So what happened between April and January? Didn't you have a pretty good idea that there was going to be a problem here? Well, we knew that she was denied Medicaid. However, I know DSS took steps to try to have the New York State Office of Mental Health reverse the decision. There was different reviews, I would say, informant appeals within the office taken. One was done in May of 2008, one was done in June of 2008. They were unsuccessful after we got the final decision that no, they were not going to be reversing that decision. Then we requested a fair hearing in June, I believe it was in June, July of 2008. The fair hearing was held in October of 2008, so all of the things were ongoing. And while all of that happened, she was in the JRC Massachusetts because OPWDD did agree to pay for the services until the final determination was made, whether or not she would be eligible for Medicaid to receive the services that she needed. And Your Honor, I just got to say again, I think the lower court's decision just did not address the fact that DSS did try to place her in a setting. We did not just disclaim responsibility for her. Perhaps it didn't work out as it should have worked out, but steps were taken. If she would have stayed at Suffolk County when they brought her back, the adult protective services at that point would have kicked in. And they would have been able to submit an application on her behalf to OMH, and with the hopes that she was going to be getting Medicaid eligibility at that point. Thank you. Thank you. Counsel. Good morning. If it pleases the court, my name is Jocelyn Crystal, and I'm counsel for the Judge Rotenberg Educational Center. And we ask this court to affirm the lower court's decision in its entirety. Excuse me. The question of restitution that the lower court found was based under the doctrine of emergency assistance. And the situation that arose at the Suffolk County DSS offices wasn't simply that the staff brought RP to their offices. The understanding, by the way, was that she was going to be met by her case manager. And taken to an appropriate placement. At no point did JRC ever think that they were taking her to a homeless shelter. But at any rate, when RP, whom I think it's important for finding why it was an emergency situation that occurred, is the court, I think it's important to bring up the fact, her background, very briefly, is that she was in the custody of the Suffolk County foster care system. From the time she was nine years old, she was taken from her home when she witnessed her mother- Her mother was incarcerated. When she was nine years old, she witnessed her mother kill her two year old brother and then was taken. From that time, she was in the care and custody of Suffolk County foster care system. So from the time she was nine years old, and I'll bring it right up to immediately prior to her being transferred to JRC, she had been bounced around from foster care home, to psychiatric hospitals, to residence, schools. We have all this in the record. The question is whether, once you brought her down to Suffolk County, because she had reached the age of majority, and they didn't have a placement for her, and you brought her back to Massachusetts, you're entitled to compensation for that. I understand. Why don't you tell us why you think that the arguments raised by Suffolk County shouldn't persuade us to reverse the district court? Well, primarily, it's just to point out the emergency situation that occurred, which is really one of the elements of restitution that the district court found.  In a situation where there was an emergency and where it's protecting the safety of the public around. That's one of the elements for, under which the lower court determined that. In addition to that, there must be a duty owed to the person. So the duty aspect of it, I think the court found that they violated a number, at least four duties that were owed to RP. The other element of the emergency situation that occurred is because of RP's, they call it maladaptive behaviors, her developmental disabilities and her explosive behaviors. So when she was brought down with the case managers, and they're taking, it was in a lobby where a Suffolk County worker came out. And they were expecting her case manager, who was not there. And they said, well, she's 21, you have to take her to a homeless shelter. And they said that in front of RP, who- Let me ask you, this was decided, though, on a summary judgment motion. It was a summary judgment decision. Yes. Are there disputed issues of fact, though, about this? Your opposing counsel said, well, that's not really the case. That they were going to do an evaluation of her, that they got there, that they weren't just going to take her to a homeless shelter. Were there any genuine disputes of material fact about what really happened over the course of this two years or so? Your Honor, there is nothing in the record, any admissible evidence to demonstrate that that was the case. I think all along, they were saying it was the hope that she would be, that OPWDD would find her qualified for this services, was the hope. And this is what had been presented all along. And in fact, had she been accepted by OPWDD, then that would have been a viable placement, because then the duty and the obligation shifts to the state. But that didn't happen, and the record is replete with instances where Suffolk County did nothing, they knew that she had been turned down. And there was an appeal, yes, but one doesn't always win an appeal, so there was nothing set in the interim. And what made this more egregious was the fact that there was no one there that she knew that was there when she was returned to New York. This is a person who had no family, no friends, no adult responsible person, all of this should have been in place in discharging her from the foster care system, but that's aside. She arrives there and she's told that she has to go to homeless shelter, at which point she started to become very agitated. Her case workers, the two that accompanied her, had known her for over a year and were familiar with the behaviors that would trigger this explosive. So it did in fact, there was an emergency situation that was occurring right there, because not only was it to take her, but the Suffolk County worker says that to the case worker right in front of her. So they didn't even have an opportunity to calm her down, to decide what was going on. So. Thank you. All right, Ms. Lopez, you reserve some time for rebuttal. Your Honor, again, I will just state that the county did take some steps to try to find her place in. And if the court doesn't have any further questions, I will just rest on the brief at this point. Thank you. Then from your arguments and the briefs and take it into consideration. Thank you. Thank you.